# United States District Court
## for the
## Western District of New York

United States of America

v.

Ajaypal Dhillon

*Defendant*

Case No. 23-mj- 5150

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### Count 1

On or about July 27, 2023, in the Western District of New York, the defendant AJAYPAL DHILLON, did knowingly and intentionally possess with the intent to distribute 100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance. All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

### Count 2

On or about July 27, 2023, from the country of Canada, the defendant, AJAYPAL DHILLON, did intentionally and knowingly import into the United States marijuana, a Schedule I controlled substance. All in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

DAVID SWIECH, JR.
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

Sworn to before me and signed telephonically.

Date: July 28, 2023

*Judge's signature*

HONORABLE MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State: Buffalo, New York

# AFFIDAVIT

STATE OF NEW YORK  )
COUNTY OF ERIE     )   SS:
CITY OF BUFFALO    )

**DAVID SWIECH JR.**, having been first duly sworn, states as follows:

1.   I am a Special Agent with the U.S. Homeland Security Investigations and have so been employed since August 2020. I am currently assigned to the HSI Buffalo Border Enforcement Security Task Force ("BEST"), a HSI sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement officers co-located in Buffalo, New York and tasked with combatting transnational criminal organizations ("TCOs") exploiting vulnerabilities of the shared international border. As such, I am a law enforcement officer of the United States, within the meaning of Section 115(c)(1) of Title 18, United States Code, who is "authorized by law or by Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law." Furthermore, per the Interagency Cooperation Agreement between the Drug Enforcement Administration ("DEA") and ICE/HSI, I am a cross-designated agent authorized to investigate violations of Title 21, United States Code.

2.   As a Special Agent, I am a graduate of the Federal Law Enforcement Training Center ("FLETC"), where I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in

Federal drug conspiracy laws, preparing drug affidavits, the Controlled Substances Act, Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants. Prior to being a Special Agent, I was employed with the United States Border Patrol from 2016 until 2020 as a Border Patrol Agent. Duties as a Border Patrol Agent consisted of line watch operations and roving patrols in order to stop the entry of illegal persons and substances attempting to enter the United States. Prior to employment with the U.S. Border Patrol, I graduated with a Bachelor's degree in Criminal Justice in 2014.

3. During my law enforcement career, I have participated in numerous cases involving the distribution of narcotics. I have participated in successful investigations into illicit drug distribution networks. I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used within the framework of drug trafficking and how drug traffickers use their persons and personal property to facilitate their illegal activities.

4. I make this affidavit in support of a criminal complaint charging **AJAYPAL DHILLON**, with violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C), possession of marijuana and controlled substances with intent to distribute, and Title 21, United States Code, Section 952(a) and 960(a)(1), importation of marijuana and controlled substances.

5. The statements contained in this affidavit are based on my involvement in this investigation, as well as information provided to me by other law enforcement officers in this investigation. Because this affidavit is being submitted for the limited purpose of seeking a

criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause to believe that **DHILLON** knowingly violated Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 952(a).

## PROBABLE CAUSE

6. On June 22, 2023, Homeland Security Investigations (HSI) was contacted by U.S. Customs and Border Protection (CBP) regarding a Customs Trade Partnership Against Terrorism (CTPAT)[1] company called Mondelez International, herein after referred to as Mondelez. As a part of maintaining CTPAT status, Mondelez conducted an internal audit of their formal cargo entries into the United States. During this audit, Mondelez identified four (4) entries that were fraudulently made utilizing their company name, invoices, and customs broker. Mondelez also advised that while they were inspecting the customs documentation submitted for the four entries, it was discovered all contained identical information including the internal purchase order number, seal number, and entered value/amount. The seal number is either a plastic or metal band that secures the trailer containing the inventory. The seal is a unique number that should not match another seal number. Once the doors of the trailer are closed, the seal is placed in the locking mechanism. To re-open

---

[1] The CTPAT program with CBP is "a voluntary public-private sector partnership program which recognizes that CBP can provide the highest level of cargo security only through close cooperation with the principle stakeholders of the international supply chain such as importers, carriers, consolidators, licensed customs brokers, and manufacturers. The Security and Accountability for Every Port Act of 2006 provided a statutory framework for the CTPAT program and imposed strict program oversight requirements." See https://www.cbp.gov/border-security/ports-entry/cargo-security/CTPAT (last visited July 28, 2023). "When an entity joins CTPAT, an agreement is made to work with CBP to protect the supply chain, identify security gaps, and implement specific security measures and best practices." Id.

the trailer doors, the seal would have to be cut or broken.  In addition, the Bill of Lading (BOL) numbers and SAP shipping numbers are all slight variations of one another on each set of documents.  The following customs entries were confirmed as fraudulent by Mondelez:

    a.    Entry number: 300-64418983
          Entry file date: 4/25/2023, Arrival Date: 4/27/2023
          BOL number: 0081753537
          SAP Shipping number: 1005010648-0001
          Seal number: 023259
          Trailer number: R1313
          Driver: Ajaypal DHILLON
          Goods manifested: Candy
          Amount: 7891 Bags

    b.    Entry number: 300-64638812
          Entry File date: 05/09/2023, Arrival Date: 5/09/2023
          BOL number: 0081754537
          SAP Shipping number: 1005010748-0001
          Seal number: 023259
          Trailer number: PTB1313
          Driver: Ajaypal DHILLON
          Goods manifested: Candy
          Amount: 7891 Bags

    c.    Entry number: 300-64873310
          Entry file date: 5/23/2023, Arrival Date: 5/23/2023
          BOL number: 0081754637
          SAP Shipping number: 1005010848-0001
          Seal number: 023259
          Trailer number: R1313
          Driver: Ajaypal DHILLON
          Goods manifested: Candy
          Amount: 7891 bags

    d.    Entry number: 300-65018006
          Entry file date: 5/31/2023, Arrival Date: 5/31/2023
          BOL number: 0081774637
          SAP Shipping number: 1005021848-0001
          Seal number: 023259
          Trailer number: R1313
          Driver: Ajaypal DHILLON
          Goods manifested: Candy
          Amount: 7891 Bags

All four of these shipments were destined for the Mondelez warehouse in Carlisle, PA. However, Mondelez has indicated that none of these shipments arrived at their warehouse.

7. Mondelez advised that they generally use Bison Trucking as their commercial carrier. Records show that **AJAYPAL DHILLON** has made commercial entries as a driver for both A and N Trucking as well as Prime Time Brothers Trucking. Bison Trucking representatives acknowledged that A and N Trucking has done legitimate sub-contract transportation for them. However, they disavowed any knowledge of Prime Time Brothers Trucking and stated that they did not utilize them as a sub-contractor for any Mondelez shipment. As noted below, **DHILLON** later told law enforcement that Prime Time Brothers Trucking is owned by his father.

8. On June 7, 2023, an entry submission was attempted through customs broker, Livingston International for Mondelez goods manifested as 7890 pieces of Candy. The driver of the shipment was listed as **DHILLON**. This entry was denied by broker Livingston. Mondelez has confirmed that this shipment attempt made on June 7, 2023, was also fraudulent. On the same day, June 7, 2023, an entry (F57-17341634) was made through a different customs broker: Wilson International. This shipment was manifested as a shipment of waffles for shipper Brimich Logistics. Wilson International provided the customs invoice and bill of lading. The seal number listed was 0042416. The driver listed on that entry was **DHILLON**. This shipment successfully entered the United States. However, the shipper has indicated to HSI that this was a fraudulent shipment.

5

9.      On Thursday, July 27, 2023, at approximately 3:19 p.m., CBP Officers at the Peace Bridge Port of Entry encountered a semi-trailer operated by **DHILLON** at the primary inspection point. **DHILLON** presented customs documentation with manifest number PRBQ9810B indicating a shipment of frozen waffles to a CBP Officer. Just as with the June 7, 2023, shipment, it was made through broker Wilson International for shipper Brimich Logisitcs. Similarly, the seal number listed was once again 0042416 (the same seal number used on June 7, 2023). As noted above, seal numbers are unique numbers. Wilson International confirmed that the entry submission containing the customs invoice and bill of lading was made manually via email address ajay1414@live.com. On July 28, 2023, the shipper of the alleged waffles, Treehouse Foods (owner of Bay Valley Foods), confirmed that the entry submission and shipment were fraudulent. According to the paperwork, the shipment of "waffles" was destined for the Publix grocery store warehouse in Georgia. Publix representatives stated that shipment queries of their internal systems showed no future shipments with any of the numbers listed on the shipping documentation, nor any upcoming shipments of waffles.

10.     When the CBP officer at the border ran the manifest in the customs database, it indicated an enforcement hold on the shipment. The enforcement hold was placed after the earlier fraudulent shipments were identified by Mondelez. **DHILLON** was referred for a secondary, Non-Intrusive (NII), inspection. At the NII Inspection area, CBP officers conducted an NII scan of the vehicle with a mobile X-ray cargo and vehicle screening system. Due to inconsistences from the scan compared to the paperwork as well as multiple anomaly areas within the commodity itself, a physical exam was then was conducted.

11. The physical exam revealed two different types of boxes within the shipment. One of the boxes furthest back was opened and revealed to have hand sanitizer. Physical inspection of one of the boxes beyond the hand sanitizer revealed packages of a green leafy substance consistent with that of previous marijuana seizures. At this time, a CBP officer radioed for backup and secured **DHILLON** in handcuffs. The Duquenois-Levine Test Kit E was used on the green leafy substance and came back positive for the properties of marijuana. The shipment was offloaded and CBP officers discovered a total 948.60 kilograms of marijuana. Also co-mingled within the marijuana were white containers containing a clear crystal-like material. A Gemini, a non-intrusive substance identifying tool, was used to identify the unknown substance and returned a positive result for ketamine. A total of 50.75 kilograms of ketamine were discovered within the boxes of marijuana.

12. Your affiant and others initiated an audio recorded interview of **DHILLON**. **DHILLON** was read his <u>Miranda</u> rights and agreed to speak with the interviewers. **DHILLON** stated he possessed two phones, one for playing music and the other for communications. **DHILLON** verbally consented to HSI personnel searching his phones and provided a pass code for his phones.

13. **DHILLON** stated he worked for his father's trucking company, Prime Time Brothers, in Ontario, Canada. **DHILLON** stated he has driven commercial trucks since age eighteen (18) and that the company had four trucks and five drivers. **DHILLON** stated he picked up the trailer around 12:00 p.m. on the same day from a bakery warehouse on the **east side** of Toronto, Ontario in Scarborough, Ontario. HSI personnel reviewed email exchange

documentation, obtained from **DHILLON's** phone, between **DHILLON** and the shipper/carrier. The exchange showed that **DHILLON** was to pick up from a warehouse between 9:00 a.m. and 10:00 a.m. on the **west side** of Toronto, Ontario in Oakville, Ontario. When presented with the discrepancy, **DHILLON** claimed an unidentified man (UM1) from the shipping company called the morning before the truck load was to be picked up and changed the pick-up location. **DHILLON** stated UM1 did not identify himself or what company he was calling from. **DHILLON** stated that when he arrived at the Scarborough warehouse, an unidentified man (UM2) waved him down as he drove closer to the warehouse. UM2 asked if **DHILLON** was there to pick up the frozen waffles load and **DHILLON** replied yes. **DHILLON** followed UM2 and was directed to back his semi-trailer at a warehouse dock. UM2 told **DHILLON** to remain in his truck while the inventory was loaded and sealed. UM2 was the only person **DHILLON** observed by his semi-trailer. Once loading was completed, approximately thirty minutes later, **DHILLON** stated he checked to see if the trailer was sealed but did not verify the seal number. The shipment was going to a Publix grocery store warehouse in Georgia. **DHILLON** then proceeded to the Peace Bridge Port of Entry where he was encountered by CBP Officers.

14. During the interview, **DHILLON** was asked if there was ever a time when he crossed an international Port of Entry and then received notification to re-route a truck load to a different destination. **DHILLON** responded that yes, that has happened before but usually only in Canada. HSI personnel contacted the Publix grocery store warehouse in Georgia where this truckload was destined for. As noted above, Publix representatives stated

8

that shipment queries of their internal systems showed no future shipments with any of the numbers listed on the shipping documentation, nor any upcoming shipments of waffles.

15. No trackers or other monitoring devices were discovered in the load, which indicates to me, based on my training, experience, and conversations with other law enforcement, that the criminal organization was not electronically monitoring the load and must have had some trust that it would reach the intended destination. Your affiant believes this point is further emphasized with the fact that the contraband is conservatively valued at over $2 million dollars. In my training and experience, and based on conversations with other law enforcement officers, a criminal organization involved in the smuggling of controlled substances would not risk $2 million dollars or more on a driver who neither knows where to bring the illicit packages, nor could be trusted not to call law enforcement should the packages be discovered. In addition, had **DHILLON** actually gone straight to Publix to deliver the goods, the marijuana and ketamine would have been immediately detected at that time; yet another risk a criminal organization such as this would not take with such a valuable load.

## CONCLUSION

16. Based upon the foregoing, I respectfully submit that I have probable cause to believe that **AJAYPAL DHILLON** has violated Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C), possession of marijuana and controlled substances with intent to distribute, and Title 21, United States Code, Section 952(a) and 960(a)(1), importation of marijuana and controlled substances.

DAVID T SWIECH JR
Digitally signed by DAVID T SWIECH JR
Date: 2023.07.28 15:21:56 -04'00'

DAVID SWIECH, JR.
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me telephonically

this  28  day of July, 2023.

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge

10